LYLE MARK COULTAS
P.O. BOX 434 GASTON, OREGON 97119
503-431-1839

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

LYLE MARK COULTAS,

      **Plaintiff,**

      v.

CARROLL J. TICHENOR, Individually
and in his Official Capacity as a Yamhill
County Prosecutor;

YAMHILL COUNTY DISTRICT ATTORNEY'S OFFICE;

STEVEN PAYNE, Individually and in
his Official Capacity as a Oregon State Police
Crime Laboratory Detective;

OREGON STATE POLICE;

      **Defendants.**

CIVIL CASE NO: 3:19-cv-21-HZ

# COMPLAINT
**TITLE 42 U.S.C. § 1983**

## COMPLAINT

At a 2001 trial Plaintiff was charged with several counts of child molest by Defendants Tichenor and Payne concealing a forensic report that proved there was no evidence of Pornography on Plaintiff's computer. Defendant Tichenor told the Court that Plaintiff's computer contained 1600 pictures of pornography that Payne produced from Plaintiff's computer and that the evidence proved Plaintiff put the pornography on the computer. Tichenor told the Court that the pornography proved plan, motive and intent. At sentencing Tichenor told the Court that the Jury convicted Plaintiff on all

**PAGE 1 of 18 Complaint 1983**

counts because of the computer pornography. Plaintiff filed a Pro-Se new trial motion based on the Defendants withholding a forensic report. Tichenor replied by stating that Plaintiff's computer contained computer pornography that was the same as or similar to what the witnesses identified at trial. During the new trial hearing Tichenor told the Court that "He and Payne" reviewed the forensic report and that there are dates at that weekend in question and that the locations couldn't determine where the children viewed the pictures from, computer hard-drives or diskettes. At Plaintiff's Post Conviction Hearing it was proven that Plaintiff's computer did not contain any evidence of the existence of computer pornography anywhere.

Tichenor told the Court there was 1600 pictures of pornography produced from Plaintiff's computer and the evidence proved Plaintiff put the pornography on the computer. **THAT IS FRAUD ON THE COURT.** Plaintiff was convicted because of Defendants **Fraud on the Court.** At Plaintiff's Pro-Se new trial hearing Tichenor told the Court that there are Dates at that weekend in question. There is not one single date on the weekend in question, **That is Fraud on the Court**. Tichenor also told the Court that the locations could not determine where the children saw the pornographic pictures from, computer hard-drives or diskettes. The withheld forensic report clearly proved there was no evidence of pornography to exist on Plaintiff's computer. **That is Fraud on the Court**. At Plaintiff's Post Conviction Hearing it was proven, and admitted to by Defendant Payne, that there is no evidence of computer pornography to exist on Plaintiff's computer.

Plaintiff **HAS NEVER** had any full and fair opportunity to have his case heard and decided on the merits so **Claim Preclusion does not apply.**

> "[A] complaint should not be dismissed for failure to state a claim unless it
> appears beyond doubt that the plaintiff can prove no set of facts in support
> of his claim which would entitle him to relief.
> CONLEY V. GIBSON, 355 U.S, 45-6 (1957)"

**PAGE 2 of 18 Complaint 1983**

## JURISDICTION

This Court has Jurisdiction under Title 42 § 1983 of the United States Constitution and Article I, section 10, of the Oregon Constitution and all Parties involved are under this Courts Jurisdiction.

The Defendants in this case are residents of the State of Oregon and within the jurisdiction of Portland Division of the United States District Court for the State of Oregon.

The Defendants listed herein did Commit **Fraud on the Court**, Conspired to commit **Fraud on the Court** and/or acted to further and/or conceal the **Fraud on the Court. Fraud on the Court** has no Statute of Limitations and **"Violates Plaintiff's State and Federal Constitutional Rights"**.

Defendants violated Plaintiff's right to Due Process as guaranteed by and through the 14th Amendment to the U.S. Constitution and/or they interfered with Plaintiff's right to a fair trial and right to effective counsel. Plaintiff has filed suit against the Defendants within the statute of limitations as required by law and has proceeded with the best of Plaintiff's knowledge and ability.

A Plaintiff in an action under Section 1983 may sue the governmental entity or the municipality itself, in addition to or instead of suing individual agents in their official and/or individual capacities. A municipality may be named as a defendant in a civil rights action under 42 U.S.C.A. § 1983 because, as the Supreme Court stated in *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611, 17 Fair Empl.Prac.Cas. (BNA) 873, 16 Empl.Prac.Dec. (CCH) 8345 (1978), a municipality is a "person" under Section 1983. The court in *Monell* held that a municipality was a "person" under Section 1983 and that therefore both a city government and its officials in their official capacities could be directly sued for monetary, declaratory, or injunctive relief for violation of a plaintiff's constitutional rights on the basis of an alleged unconstitutional action that implemented or executed a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that entity's officers. The Court in *Monell* reversed its earlier holding in *Monroe v. Pape*, 365 U.S.

**PAGE 3 of 18 Complaint 1983**

167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), where the court had held that a municipality was not a "person" under Section 1983.

## Amendment XIV, Section 1.

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

The Fifth Amendment to the United States Constitution provides, in part, that "[n]o person shall be * * * deprived of life, liberty, or property without due process of law[.]"

## FACTS OF THE CASE

Shortly after Plaintiff started a change of custody process to get custody of his daughter and on or about January, 2001 Plaintiff's Ex-wife called Plaintiff on the phone and told Plaintiff he would not get custody and that she knew how to stop Plaintiff. Two weeks later Plaintiff was accused of several illegal acts and two months later Plaintiff was arrested. Plaintiff discovered his daughter and a group of his daughters friends accused him of forcing them to view pornography on his computer on the weekend of February 4, 2001 and previous weekend visitations.

## AFTER ARREST AND PREVIOUS TO THE TRIAL

During a visit with Plaintiff's Court Appointed Private Investigator Plaintiff discovered he had several alibi's and alibi evidence.

**PAGE 4 of 18 Complaint 1983**

The Court Appointed Private Investigator instructed Plaintiff to write down any specific alibi information and he would pick it up that evening. During that evening visitation with the Investigator two Yamhill County Jail Guards stole Plaintiff's Attorney-Client privileged alibi notes from Plaintiff's Court Appointed Investigator," Jack Ashworth", and then tried to deny it ever happened. Then Tichenor changed the dates, times and places of the accusations to make Plaintiff's alibi evidence worthless, and when Tichenor saw there was no pornography on Plaintiff's computer, Tichenor and Payne concealed that exculpatory evidence from everyone. Plaintiff's public defender, James White, asked the Circuit Court Judge for funds to secure an independent forensic investigation of the computer but Tichenor immediately told the Circuit Court Judge it would be several thousand dollars and several more weeks to conduct an independent forensic search and the computer was already examined by the Oregon State Police Crime Lab and everything gleamed from that search was provided to the defense.

**TRIAL**

Tichenor told the Circuit Court Judge the primary thing in this case was the computer pornography and that there were 1600 pictures of pornography taken from Plaintiff's computer, **EX-1, TR 24.** Tichenor told the Circuit Court Judge the computer pornography proved Plan, motive and intent **EX-1, TR 27.** Tichenor argued computer pornography every hour of every day for a week long trial. Tichenor told the Circuit Court Judge that the jury convicted Plaintiff on all counts because of the computer pornography **EX-1, TR-1222.** When Plaintiff got to prison and filed his appeal Plaintiff was then provided with a copy of the trial transcripts. That is when Plaintiff discovered that Tichenor and OSP Crime lab Detective Steven Payne "had in their possession, and withheld" a forensic report with picture locations **EX-1, TR-679.** Plaintiff then filed a PRO-SE New Trial motion and was given a hearing date fifteen months after trial based on facts raised in that motion and stated herein.

**PAGE 5 of 18 Complaint 1983**

At that Hearing, "Tichenor, standing right next to Payne", told the Circuit Court Judge that he didn't have to produce that report because it was not exculpatory, it was only accumulative and only further corroborated the victims and contradicted the defense. **New Trial hearing transcripts EX-2 pages 4 and 5.** Tichenor told the Circuit Court Judge in court that the last access dates were at, near and around the weekend time frame. Tichenor told the Circuit Court Judge the picture locations did not show if the pornography was on the computer or on diskettes so the locations were not necessary. **(The picture locations proved there was never any pornography to exist on Plaintiff's computer).** Tichenor also told the Circuit Court Judge the last access dates would be several hundred pages, "Payne had the report with locations and last access dates with him in the courtroom during trial" Trial Transcripts **EX-1, Page 679, lines 12 -15.** At the new Trial hearing **Plaintiff ordered Tichenor to produce the report with locations because Payne said he had that report with him at trial.**

Tichenor went on for about 25 minutes until the Circuit Court Judge finally asked Tichenor if the report clearly proved Plaintiff's guilt. Tichenor told the Circuit Court Judge it proved Plaintiff's guilt. The Circuit Court Judge then ORDERED that Tichenor provide Plaintiff with a copy of the report that Tichenor and Payne withheld at trial and then gave Plaintiff **ten days** to review that report and the Circuit Court Judge further OREDERED that Plaintiff would be back into his courtroom to tell the Circuit Court Judge how that report proved Plaintiff's innocence.

Before daylight on the **tenth day** the Circuit Court Judge ORDERED Plaintiff removed from Yamhill County and sent to Salem on a DOC transport hold so Plaintiff couldn't call anyone. It took about four hours for Plaintiff to go through every picture in "trial exhibits 6 and 17" and look each picture up in the report Tichenor withheld at Plaintiff's trial and tried to keep Plaintiff from getting at Plaintiff's New Trial hearing. Plaintiff discovered the report clearly and easily proved there was no evidence of pornography on Plaintiff's computer and no dates for the weekends in question existed.

**PAGE 6 of 18 Complaint 1983**

The report was in alphabetical order so Plaintiff just went from start to finish and found that not one single pornographic picture ever existed on Plaintiff's computer. "The pornographic pictures were on eight diskettes that were produced from some other computer and **never inserted into, or produced from, Plaintiff's computer".** The pornographic pictures clearly came from a different computer.

When Plaintiff got back to prison he immediately filed another Pro-Se New Trial motion and attached the withheld trial report that Tichenor had told the Circuit Court Judge proved Plaintiff's guilt. Plaintiff also attached trial exhibit 6, Tichenor's "pornographic pictures from (Plaintiff's) computer" with detailed and simple instructions on how to look up each individual picture in the report Tichenor and Payne withheld from the Defense at Plaintiff's Trial.

The **"Yamhill County Court Clerk" DENIED** Plaintiff's New Trial Motion and returned Plaintiff's New Trial motion with exhibits and a "not so nice letter" informing Plaintiff that the case is closed and Plaintiff is not to contact the Yamhill County Court about this case ever again.

At Plaintiff's Post Conviction it was proven that there was never any pornography to exist on Plaintiff's computer as well as several other acts of misconduct by Tichenor. Plaintiff won Post Conviction relief. Defendant Payne agreed **EX-3** that there was no evidence of pornography to exist on Plaintiff' computer.

During Trial Tichenor put a group of little girls on the witness stand and forced them to view graphic pornography and then sent Plaintiff to prison for what Tichenor did. **Fraud on the Court is illegal and has "no statute of limitations".**

Tichenor sexually abused, molested and assaulted a group of little girls by repeatedly furnishing obscene material to them, in front of the Circuit Court Judge, the jury and everyone else in the courtroom, and the Circuit Court Judge witnessed it all. Then Tichenor sent Plaintiff to prison, as a child molester, for what Tichenor did, all while concealing a forensic report that proved there never was any pornography to exist on Plaintiff's computer **EX-3**.

**PAGE 7 of 18 Complaint 1983**

At no time did Tichenor or Payne ever remotely even suggest that the pornography was not on Plaintiff's computer, and, in fact, "repeatedly", stated the pornography was from, "and on," Plaintiff's computer, and that the evidence proved Plaintiff put the pornography on the computer. **EX-1 & EX-2.**

**COMPLAINT**

At Plaintiff's 2001 trial Defendant Tichenor stated that the primary thing is the pornography **"EX-1"**, that there was 1600 pictures of pornography taken from Plaintiff's computer **"EX-1, page 24"**, that the Pornography proved plaintiff's guilt **"EX-1, page 27"**. Defendant's Tichenor and Payne forensically searched Plaintiff's computer and then did produce a extremely detailed forensic report that Defendant Tichenor stated came from Plaintiff's computer. **EX-1 & EX-2.**

> A defendant furnished with such inculpatory evidence by the state is not required to assume that the state has concealed material information and has thereby obligated him to ascertain the Brady material on his own.  In the case before us, moreover, the state not only failed to disclose the crucial information about the accidental nature of the fire, but it actually misled the defense by disclosing a part of the experts' findings that, read alone, would lead to a conclusion directly opposite to the one they reached. 283 F.3d 1040 Gary BENN, Petitioner-Appellee, v. John LAMBERT, Superintendent of the Washington State Penitentiary, Respondent-Appellant. No. 00-99014. United States Court of Appeals, Ninth Circuit. Argued and Submitted November 5, 2001. Filed February 26, 2002.

Plaintiff argues that BENN v. LAMBERT applies in this case as follows;

A defendant furnished with such inculpatory evidence by the state is not required to assume that the state has concealed material information and has thereby obligated him to ascertain the Brady material on his own.  In the case before us, moreover, **the state not only failed to disclose the crucial information about the contents of the computer, but it actually misled the defense by disclosing a part of the experts' findings that, read alone, would lead to a conclusion directly opposite to the one they reached, and further fabricated a false report to intentionally misrepresent evidence.**

**PAGE 8 of 18 Complaint 1983**

Defendant's Tichenor and Payne took Plaintiff's Computer pictures that did not contain any pornographic images and added images from other materials **"and/or cases"** and then withheld **"the"** forensic report from the Defense at trial with the picture locations that, when examined at Post Conviction, proved that the pornographic images Tichenor and Payne produced at Plaintiff's Trial were from diskettes that were not produced from, and never inserted into, plaintiff's computer.

The law and the truth-seeking mission of our criminal justice system, which promises and demands a fair trial whatever the charge, are utterly undermined by such prosecutorial duplicity. Although our Constitution guarantees to a person whose liberty has been placed in jeopardy by the State the right to confront witnesses in order to test their credibility, that right was willfully impaired in this case. By unlawfully withholding patently damaging and damning impeachment evidence, the prosecutor knowingly and willfully prevented Plaintiff from confronting the witnesses against him. **Such reprehensible conduct shames our judicial system and clearly is <u>"Fraud on the Court"</u>.**

Defendant Carroll Tichenor, now a retired Yamhill County Judge, has never even denied Plaintiff's allegations.  At Plaintiff's Post Conviction, and only after the independent forensic investigation by a Government computer forensic specialist, Defendant Steven Payne changed his original Trial testimony and Testified by Affidavit and a forensic report at Plaintiff's Post Conviction Hearing that there was no evidence of pornography to **"EXIST"** on Plaintiff's computer. **EX 3**

Defendant Steven Payne authored a computer site where he appears to be selling a forensic tool called "DataLifter" and Payne says it is **"Great for determining if a file was ever present on a piece of media" EX-4.** This Forensic tool was utilized to examine Plaintiff's computer.

Plaintiff immediately filed a Bar Complaint against Defendant Tichenor with the Oregon State Bar and a Complaint against Defendant Payne with the Department of Professional Standards of the Oregon State Police. Both Complaints were dismissed.

**PAGE 9 of 18 Complaint 1983**

Plaintiff spoke to, and wrote to, several members at the Oregon State Bar and was told repeatedly that there was no evidence of wrongdoing. Plaintiff spoke to several members of the State Police and was again told there was no evidence of wrongdoing.

## FRAUD ON THE COURT

Defendant Carroll Tichenor, as a Yamhill County Prosecutor, told the Court that the primary issue was the computer pornography, that there was 1600 pictures of Pornography on Plaintiff's computer, that the computer pornography proved Plaintiff's guilt and that the evidence proved the Plaintiff put the pornography on the computer. After Plaintiff was found guilty Defendant Carroll Tichenor, as a Yamhill County Prosecutor, told the Court that the Jury had convicted the Plaintiff unanimously on all counts because of the computer pornography.

## THE LAW OF FRAUD ON THE COURT

"Fraud upon the court" has been defined by the 7th Circuit Court of Appeals to "embrace that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." Kenner v. C.I.R., 387 F.3d 689

(1968); 7 Moore's Federal Practice, 2d ed., p. 512, ¶ 60.23. The 7th Circuit further stated **"a decision produced by fraud upon the court is not in essence a decision at all, and never becomes final."**

"Fraud upon the court" makes void the orders and judgments of that court. It is also clear and well-settled Illinois law that any attempt to commit **"fraud upon the court" vitiates the entire proceeding**. The People of the State of Illinois v. Fred E. Sterling, 357 Ill. 354; 192 N.E. 229 (1934) ("The maxim that fraud vitiates every transaction into which it enters applies to judgments as well as to contracts and other transactions."); Allen F. Moore v. Stanley F. Sievers, 336 Ill. 316; 168 N.E. 259 (1929)

**PAGE 10 of 18 Complaint 1983**

("**The maxim that fraud vitiates every transaction into which it enters ...**");
In re Village of Willowbrook, 37 Ill.App.2d 393 (1962) ("**It is axiomatic that
fraud vitiates everything.**"); Dunham v. Dunham, 57 Ill.App. 475 (1894),
affirmed 162 Ill. 589 (1896); Skelly Oil Co. v. Universal Oil Products Co.,
338 Ill.App. 79, 86 N.E.2d 875, 883-4 (1949); Thomas Stasel v. The American

Home Security Corporation, 362 Ill. 350; 199 N.E. 798 (1935).
Under Illinois and Federal law, **when any officer of the court has
committed "fraud upon the court", the orders and judgment of that court
are void, of no legal force or effect.**

In U.S. law, a "false statement" generally refers to the United States federal
false statements statute, contained in 18 U.S.C. § 1001. Most commonly,
prosecutors use this statute to reach cover-up crimes such as perjury, false
declarations, and obstruction of justice and government fraud cases.

The statute criminalizes a government official who **"knowingly and willfully"**:

**(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;**
**(2) makes any materially false, fictitious, or fraudulent statement or representation; or**
**(3) makes or uses any false writing or document knowing the same to contain any
materially false, fictitious, or fraudulent statement or entry.**

Defendants Tichenor and Payne have misrepresented material facts. Under the Law those

misrepresentations by Tichenor and Payne constitute **Fraud on the Court**. The other Defendants listed

herein have intentionally concealed the illegal and improper conduct of Defendants Tichenor and Payne

which Constitutes **Fraud on the Court and Conspiracy to Commit Fraud on the Court.**

Every member of the Oregon State Bar has to take an Oath clearly swearing to;

"faithfully and honestly conduct myself in the office of an attorney in the
courts of the State of Oregon; that I will observe and abide by the rules of
professional conduct approved by the Supreme Court of the State of Oregon:
and that I will support the Constitution and laws of the United States and
of the State of Oregon."

**PLAINTIFF'S POST CONVICTION**

Plaintiff won Post Conviction Relief and was ordered a New Trial. Plaintiff was returned to the

Yamhill County Jail and at the New Trial date Plaintiff was offered a plea of two misdemeanor counts

**PAGE 11 of 18 Complaint 1983**

and time served. At the pressure from Plaintiff's Counsel Plaintiff took the plea deal.

Plaintiff filed a Bar Complaint on Defendant Carroll Tichenor and a Complaint on Steven Payne with the Oregon State Police Department of Professional Standards.

Plaintiff's Complaints consisted of, in part, (a) Defendants Carroll Tichenor and Steven Payne repeatedly stated that Plaintiff's computer contained pornography when the forensic evidence proved otherwise, (b) that after Defendant Steven Payne testified at Plaintiff's Post Conviction that there was no evidence of pornography on Plaintiff's computer and Defendant Carroll Tichenor received this evidence that obviously contradicted his trial statements and witness testimony, Defendant Carroll Tichenor still continues to deny the truthfulness of the allegations by Plaintiff, (c) that after Plaintiff filed a complaint on Defendant Steven Payne, "Payne" has never once attempted to clear his reputation or the reputation and integrity of the Oregon State Police Crime Laboratory by simply stating that he notified Defendant Carroll Tichenor there was no evidence of Pornography on Plaintiff's computer.

Defendant's Carroll Tichenor and Steve Payne clearly violated Plaintiff's Due Process Rights to a fair trial by concealing forensic evidence, injecting false evidence and sending Plaintiff to prison. The Oregon State Bar was repeatedly informed about the conduct of Carroll Tichenor and repeatedly refused to hold Carroll Tichenor accountable. The Oregon State Bar has repeatedly refused to hold Carroll Tichenor accountable for Tichenor's trial statements where he repeatedly stated that Plaintiff's computer contained pornography and that the forensic evidence proved Plaintiff put it on the computer when the forensic evidence Tichenor withheld proves **there was never pornography** on Plaintiff's computer. Oregon State Police Crime Laboratory Detective Steven Payne concealed a forensic report that clearly proved that Plaintiff's computer never, **"at any time"**, contained any pornographic images and then Steven Payne testified at Plaintiff's trial that Plaintiff's computer contained the pornographic

**PAGE 12 of 18 Complaint 1983**

images. The Oregon State Police Department of Professional Standards dismissed Plaintiff's complaint and stated there was no evidence of misconduct.

Defendant's Carroll Tichenor and Steven Payne, both together, withheld evidence which proves **Fraud on the Court and Conspiracy to Commit Fraud on the Court**. Defendant's Carroll Tichenor and Steven Payne both continued to lie about their misrepresentations for approximately six years and until Plaintiff's Post Conviction where Defendant Steven Payne, and because of the Government Computer Forensic Specialist, produced an Affidavit and report stating that there was no evidence of pornography to exist on Plaintiff's Computer.

At no time has Defendant Carroll Tichenor ever stated that Defendant Steven Payne never told him there was no evidence of pornography on Plaintiff's computer. At no time has Defendant Steven Payne ever stated he told Defendant Carroll Tichenor there was no evidence of pornography on Plaintiff's computer. Plaintiff contends that Defendants Tichenor and Payne both knew that Plaintiff's computer never contained any evidence of pornography and that is why neither one point the finger at the other which further supports Plaintiff's accusations of a conspiracy.

Attorney, Prosecutor, Judge, and now Defendant Carroll Tichenor did conceal a forensic report that proved Plaintiff's computer never contained any pornography and that the accusers who said so were committing perjury, and Defendant Tichenor forced the identification of the pornography to the minors testifying at Plaintiff's trial and allowed them to commit perjury.

Tichenor concealed a forensic report that proved no pornography existed on Plaintiff's computer and then Tichenor suborned perjury and knowingly used perjured testimony to convict Plaintiff.

Suborning perjury and knowingly using perjured testimony to convict anyone is a violation of the law, the rules of court, and the Oregon and the United State's Constitutions and is **Fraud on the Court.**

**PAGE 13 of 18 Complaint 1983**

**There is no statute of limitations for Fraud on the Court. No conviction can stand if the conviction was gained by deceit, deception, misrepresentation, or fraud. <u>An Issue of Fraud on the Court can be raised at any time, in any court, as a matter of law.</u>**

Mr. Tichenor repeatedly stated that Plaintiff's computer contained files of pornography and that the pornography proved Plaintiff's guilt. Mr. Tichenor stated this in replies to several Bar Complaints Plaintiff filed against him "and" at Plaintiff's Post Conviction when it was clearly proven that Plaintiff's computer never contained any pornography, Mr. Tichenor never once said one word about any mistake or that the O.S.P. Crime laboratory detective never told him there was no evidence of pornography on Plaintiff's computer. Furthermore, not only did the forensic evidence Defendant Tichenor concealed at Plaintiff's trial prove there was never any pornography on the computer, it also proved the allegations against Plaintiff were false and that Defendant Tichenor denied Plaintiff the ability to confront his witnesses with the truth.

In the beginning, Defendants,Tichenor and Payne could have claimed that facts were mistakenly misrepresented. Plaintiff gave Defendants Tichenor and Payne numerous opportunities to correct any such mistake. At Post Conviction and **ONLY** after an Government Forensic specialist got involved did Steven Payne testify by affidavit and report that there was no evidence of pornography to exist on plaintiff's computer.

Plaintiff has eliminated any possibility of Defendants Tichenor and Payne claiming a mistake. Plaintiff has clearly established that a clear and planned **Fraud on the Court** has been perpetrated by Defendant's Tichenor and Payne and rather than the Oregon State Bar or the Oregon State police investigating and punishing, both agencies ignored and covered it up.

**PAGE 14 of 18 Complaint 1983**

While the Plaintiff is Pro-Se and Plaintiff has no Oath over his head, Plaintiff has proven the facts as stated herein. Defendants Tichenor and Payne have both taken Oaths and they have both violated the rules of court, the rules of law, the Constitutions of the State of Oregon and the United States. The Oregon State Bar, The Oregon State Police, The Oregon Department of Justice, the Yamhill County District Attorney's Office and the Yamhill County Sheriff's Department all know this and do nothing. All agencies are of and/or within the State of Oregon.

The Defendants have violated the Plaintiff's Due Process Rights. Defendants Tichenor and Payne conspired together to conceal forensic evidence and suborn perjury to deny Plaintiff his Right to a fair trial and Due Process of Law.

**"Fraud upon the court" makes void the orders and judgments of that court.**

Fraud on the Court clearly occurred at Plaintiff's trial and that **makes void the orders and judgments of that court.**

Federal prosecutors often charge Fraud cases as a conspiracy to commit fraud if it involves two or more people. If charged as a conspiracy, then the prosecutors do not have to prove that the ultimate goal of the fraud was accomplished, merely that two or more persons agreed to commit a criminal fraud **and took steps, or actions in furtherance of the conspiracy.**

Mr. Tichenor and Mr. Payne have lied to the Oregon State Bar for several years about this, stating the computer contained pornography. In fact, in one response to the Bar Mr. Tichenor stated that he didn't believe Plaintiff and neither did the jury. The forensic evidence he concealed proved otherwise and to this day neither Tichenor or Payne have ever admitted any form of mistake occurred.

At Plaintiff's second trial the prosecutors, Darren Tweedt of the Department of Justice and Lisl Miller of the Yamhill County District Attorney's Office both failed to discover to the Defense that the computer forensic evidence had vanished after it was discovered that the pornography that was presented as evidence at Plaintiff's first trial did not exist on Plaintiff's computer.

**PAGE 15 of 18 Complaint 1983**

The diskettes that contained the pornography disappeared immediately after Defendant Payne was ordered to re-examine the computer evidence for Plaintiff's Post Conviction Hearing and after it was examined by the Government specialist hired by Plaintiff's Post Conviction Attorney and prior to Plaintiff's second trial. Plaintiff argues the diskettes disappeared because a further investigation would establish exactly where they were produced from. An examination of the dates on the data from the diskettes already proved the diskettes were produced from **"a computer"** that contained files with hundreds of pornographic images. The images have Dates that are concurrent, in one and two second intervals. This fact proved the pornography was loaded to the diskettes at one time and from a file that contained the images of pornography.

Darren Tweedt of the Department of Justice and Lisl Miller of the Yamhill County District Attorney's Office both filed Bar complaint's on Defendant Tichenor for his improper conduct at Plaintiff's trial but the Oregon State Bar dismissed those complaints as well.

The Conduct of the defendants clearly constitutes Fraud on the Court and Fraud on the Court has no Statute of Limitations. Fraud on the Court voids any decisions of any Court where the Fraud occurred and/or allowed to continue.

At Plaintiff's second trial, Defendants Yamhill County District Attorneys Office and the Department of Justice failed to discover to Plaintiff that the exculpatory computer evidence was illegally destroyed and/or disposed of. This conduct constitutes Fraud on the Court which has no Statute of Limitations. Because Plaintiff was not made aware of this Plaintiff took a No Contest Plea and was released with time served and **no parole, probation, or post prison supervision.**

**CLAIM PRECLUSION**

Based on clearly stated Oregon Law Preclusion does not apply if Plaintiff never had a full and fair opportunity to have his case heard on the merits. Plaintiff's case, to this day, has never been heard

**PAGE 16 of 18 Complaint 1983**

on the merits so there is no preclusion argument to be made. Hundreds of cases state this very fact and it is clearly established Oregon Law. Plaintiff's case was not heard on the merits so until it is Plaintiff can and will continue to file his civil suit until his case is heard and decided in a court of law.

**DENIED FEDERAL HABEAS**

The law clearly requires that to file Federal Habeas a Plaintiff is required to exhaust all State remedies available to Plaintiff first, then Plaintiff has to be on parole, probation or post prison supervision. In this case, in the process of exhausting State remedies, Plaintiff won post conviction relief and a new trial was ordered. Plaintiff's new trial never occurred because the day of the new trial Plaintiff was offered a no contest plea to two previously uncharged misdemeanors and instant release and no parole, no probation and no post prison supervision. Three months later Plaintiff discovered that the Defense Counsel refused to disclose that the forensic evidence was illegally disposed of approximately one year earlier. Because of the plea deal "AND" the **newly discovered evidence** Plaintiff was denied the ability to file Federal Habeas. Because Plaintiff had no Federal Habeas access Plaintiff can address this case in District Court under a Civil 1983 action.

**CONCLUSION**

The Defendants concealed exculpatory evidence, fabricated a false forensic report, suborned and knowingly used perjury, and repeatedly lied to convict Plaintiff of crimes and this conduct clearly constitutes Fraud on the Court. At Plaintiff's New Trial hearing Defendants Tichenor and Payne attempted to conceal a forensic report from Plaintiff and the Court and Tichenor lied to the Court about the Contents of the forensic report. At Plaintiff's Post Conviction Hearing Defendant Payne was exposed to have lied in his report and it was proven that Defendants Tichenor and Payne did conceal an exculpatory forensic report. Three months after Plaintiff's Second Trial date it was discovered that

**PAGE 17 of 18 Complaint 1983**

Defendant Payne illegally destroyed the forensic evidence in this case almost a year prior in an obvious attempt to conceal the Defendants repeated Fraud on the Court.

## PLAINTIFF'S SEEKS RELIEF AS FOLLOWS

1, The criminal charges against Plaintiff should be vacated for **Fraud on the Court**, as well as everything associated with, and attributed to those charges for **Fraud on the Court**.

DATED this _7th_ Day of January, **2019**.

Lyle Mark Coultas
Pro-Se
P.O. Box 434
Gaston, Oregon 97119
503-431-1839

**PAGE 18 of 18 Complaint 1983**

# EXHIBITS

1, Trial Transcripts

2, New Trial Hearing Transcripts

3, OSP Detective Payne Affidavit

4, OSP Detective Payne "Datalifter"

State v. Lyle Mark Coultas, CR010164                    24

EX-1

evidence be admitted.

Now, in that case, Cook versus Michael, they were talking to establish identity. Obviously, we're not dealing with the issue of identity here. But we are dealing with this notion of grooming, modus operandi, plan, intent, which certainly the law makes allowances for.

But, again, we come to that notion that there's this danger of painting Mr. Coultas with an extremely broad brush. And I think there would be some severe prejudice that could not be overcome even with the evidence that the defense might be able to present at trial.

THE COURT: Is that all on that issue?

MR. WHITE: That's all I have, Your Honor.

THE COURT: Mr. Tichenor?

MR. TICHENOR: Your Honor, we also oppose this motion. The aspect of grooming is not the primary issue that we're presenting. Although, it will have some factor, play, in this one. The primary thing is to the pornography. We're not attempting to show that Mr. Coultas possessed pornography. There's some 1600 pictures, 14, 1600 pictures, of interest that the State police officer took off of the computer. We will be offering that as an exhibit,

Stephanie B. Lanier
Official Court Reporter

State v. Lyle Mark Coultas, CR010164                    25

which has been identified as State's Exhibit 6 on the list that's presented to the Court. This is the composite pictures that were of interest that the State police pulled off the Internet or off of the computer on the hard drive. There's some very graphic pornography.

But the pictures that we will be presenting to the Court and presenting in -- through the testimony of the children are those pictures that they have identified as remembering having seen either in still pictures or as part of videos that were shown.

Donna Coultas was shown pornographic material on videos, in pictures, under the guise that he was teaching her about her body. He was touching her breasts and her vaginal area under the guise that he was teaching her about her body. All of this is a part of the process that he was designing to explain to Donna that there was nothing wrong with what he was doing and it was really for her benefit.

What we're showing the pictures for is to show that this is the kind of thing that was being used to condition her in how she was receiving both the physical and the mental aspects of the sexual assault on her.

We will have a counselor that will talk

psychologically traumatized by what happened, that she was committed to the children's psychiatric ward in Providence Hospital as a result of the sexual abuse, the physical touching, and the pornography.

This had an impact on her that was devastating. She is still in counseling. Her counselor will come and offer the medical reports and exhibits from the doctor from the psychiatric ward as well as her own counseling that this child was so traumatized that she was thinking very seriously, had ideations of suicide, and the pornography was the main factor that influenced her and kept her from reporting a hopeless situation she didn't know what to do with.

What we are intending to show is that the defendant was showing the pornography as a way of gauging the results and the actions of the children to see who he would next victimize. It shows that there was a plan, there was a motive, that there was an intent that none of these touchings that are alleged, whether it's sex abuse in the first degree or third degree are accidental. The one in the third degree is a rubbing on the buttocks while the child is sleeping. The same child was one that was shown pornography. The same child was one that was shown at a time when she was with the other girls at this birthday party a

flashing her breasts at the other girls, and the defendant happened to see it. And her reaction to the pornography and the flashing of the breasts, this was a target of opportunity, and he took it later in touching her.

Your Honor, this is all part of a common transaction. It's all part of the sexual motivation and thought process of the defendant. It's all part of the scheme that he was using. And it's all part of the commonality of the whole transaction that he was involved with his daughter and each of these other young girls that were brought down there.

To indicate that this is not part of this transaction and to separate this out or to exclude it just because the statute was held unconstitutional is not -- the State would argue is inappropriate. The constitutionality of that statute has nothing to do with the wrong purpose and motive of the defendant in conditioning these children and finding out which one he was going to select and target.

Each of these children will describe the pictures that they have seen, and every picture that will be presented to the jury is a picture that the children themselves have identified prior to this time with the permission of their parents, that they have

Stephanie B. Lanier
Official Court Reporter

State v. Lyle Mark Coultas, CR010164          32

THE COURT: Just the bottom line is you intend to show the pornography but only insofar as it was shown to or used to -- well, I'll use the word "groom" the victims in this case.

MR. TICHENOR: That is correct, Your Honor.

THE COURT: You don't intend to offer any pornography that was possessed alone without making that connection to a specific victim.

MR. TICHENOR: With the one exception, and that is with the State police examiner to show that these -- all of these pictures -- he's got 60 pages of pictures that he needs to show that those are the ones that he prepared and that he will identify from that. The --

THE COURT: But that's just -- that's more a chain of custody, so to speak, issue, than it is possession of the pornography.

MR. TICHENOR: That's correct. And that document I don't intend to show to the jury or give to the jury, but I want it as a matter of record so that we show that it did come off of his computer.

THE COURT: Okay. Mr. White?

MR. WHITE: Your Honor, in essence, by trying furnishing obscene material, Mr. Tichenor has stated that these alleged victims saw this stuff, but

*Steven Payne Testimony*

A.   Correct.

Q.   These pages, do these contain the pictures that you found on the computer that you thought might have been pictorial -- pictorially related to this case?

A.   Yes, they are.

Q.   Now, on each one of those, is there a description or a narrative at the bottom that indicates the file and where those would be located, that you found them on the computer?

Bottom of each of the pictures.

A.   Yeah.  On this example here, there is a file name and a file date.  On this particular copy, there is not the location of them.  However, I do have that with me.

Q.   Okay.  But were you -- from looking at that document, were all of those images that are depicted on Defense Exhibit -- or State's Exhibit 6 found on the defendant's computer from your forensic analysis?

A.   They were found either on his computer or within the eight floppy disks of interest.

Q.   Okay.  Now, I'm showing you -- put that over there for reference.

I'm showing you what's been marked State's Exhibit 7.

State v. Lyle Mark Coultas, CR010164                1221

trial and the things that were coming up.  It's had a tremendous impact on her that she's going to need to go through some fairly extensive counseling.

Each of these children have been subjected to the type of pornographic materials on the computer and the things that were shown here in the court that they should never have had to undergo at any time, and that because of the defendant's actions and the necessity to do this to prove the actions and the things that he committed, they were again required to go through and see this pornographic material again on the witness stand, which was something that was distasteful and unpleasant to go through, but something that they nevertheless went through to make sure this individual does not do this again to other people.

Each of these children testified -- they described the circumstances in which that they were subjected to the abuse.  Each of them described how they were not willing to disclose this.  They weren't making any disclosure until one child came home from the February party down there and told her mother, and this started everybody going through and starting to disclose it.

I have read the letters that were submitted

Stephanie B. Lanier
Official Court Reporter

State v. Lyle Mark Coultas, CR010164        1222

by the defense, some from the friends, people that have known the defendant. And, again, they should be considered by the Court. But each one of these individuals were not present in the court. They did not hear the evidence. And they did not hear what this jury heard. And the jury came back with unanimous findings.

I have had a request by the husband of one of the jurors that they were not going to be present. They were not going to be able to be present. The juror wanted to be present for this because she has also gone through a psychological adjustment because of what she's heard and what's been presented and seen the reactions of the children, and she's a nurse, and she stated through her husband that she has on her own provided counseling to some of the other jurors because of the impact that this case had on them.

They were so impressed with the type of testimony that in almost all of the counts they were unanimous in their findings that the defendant sexually abused and molested these children, either by content or the subject matter that was shown to them or, in fact, physically touching them.

The State feels, Your Honor, that this is a particularly aggravated case because of the nature of

Stephanie B. Lanier
Official Court Reporter

normally was no longer there.

When the computer was seized we had no way of knowing whether the material on that computer was, in fact, the same material that would have been shown or would have been the same material that was there at the time that the children were shown the Sailor Moon cartoons and that type of information.

When I went over and talked to Detective Payne and obtained the information from him in his report, I asked him if there was any way that he could determine when these pictures were actually shown. And he said, Yes. The last access date would show when these particular pictures were shown. But he stated if there is other material that is not there, if there are floppy disks or there are CD ROMs or anything else, that had this material on them, the last access date would be on that particular device, not on the hard drive. And he said there would be no way of showing what material was actually shown versus what material was available on the hard drive at this time.

I asked him how long it would take to run it and what the volume would be, and he stated it would be several hundreds of pages of running these last access dates and just running off all of that material. And I stated that it just didn't appear that if -- even if we

Stephanie B. Lanier, CSR, RPR

found some of these things that were at or near the same date or were on the same date, I said we wouldn't be able to show that these, in fact, were the pictures. I decided that it wasn't relevant to the case, and it was a lot of effort and expense that wasn't going to produce much of anything to this trial.

And with the children when they were going through, they were able to identify this is a picture that I remember seeing this kind of a picture on there. Where it came from and whether it was off of the floppy disk or a CD ROM or where it was, was not the issue, but that they were seeing, and they were calling things that they had been shown by the defendant when they were at that house. And that was further corroboration that what they were describing, independent of this exhibit that was shown to them, was, in fact, occurring at that house. And that was the relevance and that was the thing that we were presenting to the jury.

Whether that was, in fact, the same picture was not an issue, because there was no way that I could make that kind of a determination with any reasonable certainty.

In looking at Detective Payne's last access dates, on some of the Sailor Moon exhibits, just thumbing through this, I noticed that there are some

that are out in March after the date of the time when the children were there at the house. There's some last access dates that are at or around and near the February time frame. And looking at a lot of the material, the dates go before, some of them as early as 2000. Some go back up to some period of time after the -- just before the computer was seized.

I have not gone through picture by picture, but I went to the -- there's an alphabetized area and went to S where it would be representing the Sailor Moon and saw that the dates were all over the place.

In any event, what the Court of Appeals and the Supreme Court has stated, that for newly discovered evidence, the defendant has the burden to establish that he did not have -- that there was no basis or reasonable basis with due diligence that he could have had that material before trial or during trial, and the cases are really very clear, and I cited those in the memo. I have copies that can be provided to you if you wish. But the -- but if the defendant by reasonable diligence could have had this material even if it came up for the first time during the course of the trial when they were talking to Detective Payne, that would preclude him from stating this is newly discovered material.

Stephanie R. Tanier  CSR  RPR



**Encase Examination Report**
**Review of Lyle Coultas evidence based on P.I. Peter Constantine's Affidavit**
**OSP 01-143930**

I have conducted an additional examination based on this information and based on information found within the affidavit from Peter J. Constantine, an independent computer forensic examiner hired by Mr. Coultas's council.

My first steps in this exam were to collect all digital evidence and open them within a controlled environment using Encase, a well known and established computer forensic tool. I read through Mr. Constantine's affidavit and created a keyword list of the names of the images there were either marked by or shown to the witnesses involved in this case.

Mentioned on page 5 of 6 of my original report dated 7/9/2001, the initial installation date of the computer operating system from evidence item E1 drive 1 of 2 hereafter referred to as HD1, was 1/30/2001. At the time of my initial exam this date was not that significant and any reader may not have realized its importance.

On 1/30/2001 the computer seized from Mr. Coultas's house had a new installation of Microsoft Windows 98. The significant dates in question are February 2nd, 3rd or 4th 2001, just three days since the installation occurred. I again reviewed all evidence using Encase 4.22a, conducting multiple sorts by Last Access Date, Creation Date and Last Written Date. My findings corroborate what Mr. Constantine also found, that the files of significant value in this case could not be found on HD1 or the drive 2 of 2, hereafter referred to as HD2, based on the current state of Mr. Coultas's computer hard drive. *" Not Testified at my Trial ""He lied in Court*

Of significant value however are the floppy diskettes seized (See scenario #2) and examined during my initial examination and metadata found in the SYSTEM.DAT file of the registry (See scenario #1.)

I reviewed Mr. Constantine's affidavit and again reviewed my original computer examination report. I created a keyword list of file names that the witnesses viewed and either identified or not identified but was used in this investigation.

I searched all the floppy diskette images and both hard drives seized during this case. The result of this searched revealed data contained in "slack" space of FDD 42, 48, 68 and 164. These are new findings from FDD 42 and 164.

What these findings show is that the images the witnesses saw were in the possession of Mr. Coultas; however existed prior to the current installation found on HD1 (see pages 12 - 15, items 1 through 4.)

I used a tool from Access Data, Inc. called Registry Viewer which I am licensed to use. Using Encase 4.22a I copied out

Page 2 of 16 – Findings reported by Detective Stephen Payne of the Oregon State Police

Case 3:19-cv-00021-HZ   Document 1   Filed 01/07/19   Page 32 of 33



# DataLifter™



**Last updated: October 30, 2003**

**Main Menu** | **DataLifter.Net Bonus Tools Screen Shots** | **Screen**

Main Page
How To Buy
Downloads
Bonus Tool Registration
Web Forum
Online Tutorial
Contact Us
Software Updates
Useful Links

<< BACK | PAGE 1 2 3 | MORE >>




**GREP Strings** - For users of Encase® from Guidance Software®. This useful tool creates the \xff \xff GREP like string patterns for you. After you create these strings you can copy and paste them quickly into the search functionality of Encase.


**MIME Recovery** - Detect, extract and view email attachments lost in unallocated space. This tool attempts to seek out the original file name and then proceeds to recover the Base64 data for you.

**DataLifter v2.0**
tools to assist wit
*Computer Foren*

- Active R
- Disk2File
- File Extr
- Image Li
- Internet F
- File Sign
- Email Re
- Ping/Trac
  route/WF
- Recycle F
- Screen C

## Training Partners

International Association
of Computer Investigative
Specialists (IACIS)

Computer Forensic
Training Course Online

Kennesaw University

CyberSecurity Institute

Internet Crimes Inc.

New Technologies Inc.

National White Collar
Crime (NW3C)




**C-HASH** - A unique tool for establishing the presence of files from two source of media. C-HASH determines the presence of nearly any part of a source file from the target data it searches. Great for determining if a file was ever present on a piece of media.



**NProtect Viewer** - View added file deletion information from users of Norton Protected Recycle Bin.

<< BACK | PAGE 1 2 3 | MORE >>

Copyright 2002 StepaNet Communications Inc. DataLifter™ and Forensicware™ are Trademarks of StepaNet Communicatio rights reserved. Web site author: Steve Payne



# INDEX OF STATE's EXHIBITS
## STATE v. COULTAS
### CR 01-0164

*ALL ADMITTED*

**STATE'S EXHIBIT 1** - Juliette's House Video Tape of Donna Countas Interview

**STATE'S EXHIBIT 2** - Juliette's House Medical Examination of Donna Coultasby Dr. Moore

**STATE'S EXHIBIT 3** - Juliette's House Interview of Donna Coultas by Michele Warner

**STATE'S EXHIBIT 4** - Caitlin Fricker's Counseling Records

**STATE'S EXHIBIT 5** - Caitlin Fricker's Medical Records From Providence Hospital

**STATE'S EXHIBIT 6** - Images of Interest from Defendant's Computer Pages 1 to 71

**STATE'S EXHIBIT 7** - Images of Sailor Moon Characters

**STATE'S EXHIBIT 8** - Simpson Lumber Company Firewood Cutting Permit (Permit @ p. 55)

**STATE'S EXHIBIT 9** - Photo of Defendant with Elk & Rifle (Elk Yahoo @ p. 44)

**STATE'S EXHIBIT 10** - Photo of Defendant in Plaid Shirt (Grizly me @ p. 46)

**STATE'S EXHIBIT 11** - Photo of Defendant in T – Shirt (Picture 1 @ p. 56)

**STATE'S EXHIBIT 12** - Advertisements for Teenage Sex [(O1(3) p. 1); (O1(1)1 p. 1); (12(1)1 p. 2); (Ars_petite1(1) p. 41); (DST(3)1 p. 44); (Live_Teen-Stiffy p. 50); (Logo 2x2(1) p. 50); (Russianteens p. 61); (Teenswtoys p. 66); (Teen01 p. 66); (Teensexmailer002_01 p. 66); (Teenblowjob(1) p. 66); (Txoo007 p. 69)]

**STATE'S EXHIBIT 13** - 14 Pictures of Young a Girl in Provocative Poses by Bed [(1Smll(1) p. 3 & p. 5); (4Smll(1) p. 8); (3Smll(1) p. 6); (9Smll(1) p. 11); (5Smll(1) p. 9); (7Smll(1) p. 10); (13Smll(1) p. 2); (6Smll(1) p. 10); (10Smll(1) p. 2); (8Smll(1) p. 11); (15Smll(1) p. 3); (11smll(1) p. 2); (14Smll(1) p. 3); (12Smll(1) p. 2)]

**STATE'S EXHIBIT 14** - 11 Pictures of Various Young Girls in Provocative Poses [(Cover p. 43); (Animate_01(1) p. 41); (Animate_03(1) p. 41); (Jen2(1) p. 48); (Jen(3)1 p. 48); Jen 4(1) p. 49); (Rabbit1(1) p. 58); (Rabbit2(1) p. 58); (Rabbit5(1) p. 58); (Rabbit5(1) p. 58); (Rabbit13(1) p. 58)]

**STATE'S EXHIBIT 15** - Two Photos of Britney Spears

**STATE'S EXHIBIT 16** - Donna Coultas' Counseling Records – Patti Bailey

**STATE'S EXHIBIT 17** - Pornographic Pictures Shown to Girls off of Computer

**STATE'S EXHIBIT 18** - *Steller – Fricker E Mail*

**STATE'S EXHIBIT 19** - *Poster From D's Bedroom Wall*

1